# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

Center for Biological Diversity, et al.,

Plaintiffs,

v.

Sally Jewell, et al.,

Defendants.

No. CV-14-02506-TUC-RM

**ORDER**

Plaintiffs Center for Biological Diversity and Defenders of Wildlife filed this action against Defendants Sally Jewell, then Secretary of the United States Department of the Interior, and Daniel M. Ashe, then Director of the United States Fish and Wildlife Service (collectively, "Federal Defendants"), challenging two interrelated agency actions. (Doc. 1.) First, Plaintiffs challenged Federal Defendants' refusal to list the cactus ferruginous pygmy owl as a threatened or endangered species under the Endangered Species Act ("ESA"). *See 12-Month Finding on a Petition to List the Cactus Ferruginous Pygmy-Owl as Threatened or Endangered with Critical Habitat* ("Final Pygmy Owl Finding"), 76 Fed. Reg. 61,856 (Oct. 5, 2011). Second, Plaintiffs challenged the interpretation of the statutory phrase "significant portion of its range" promulgated by the United States Fish and Wildlife Service and the National Marine Fisheries Service ("NMFS"). *See Final Policy on Interpretation of the Phrase "Significant Portion of Its Range" in the Endangered Species Act's Definitions of "Endangered Species" and*

*"Threatened Species"* ("Final SPR Policy"), 79 Fed. Reg. 37,578 (July 1, 2014).[1] On March 29, 2017, this Court entered summary judgment in favor of Plaintiffs and against Federal Defendants and Intervenor-Defendants National Association of Home Builders and Southern Arizona Home Builders Association. (Docs. 72, 73.)

Pending before the Court is Federal Defendants' F.R.C.P. 59(e) Motion to Alter or Amend the Court's Judgment (Doc. 76). In the Motion, Federal Defendants ask the Court to correct what they purport to be an erroneous characterization of the NMFS's listing determination for the African coelacanth. Federal Defendants also ask the Court to clarify that its remedy of vacating the Final SPR Policy is limited to the District of Arizona and the substantive aspect of the policy found unlawful by the Court or, alternatively, to remand without vacatur.

## I. Legal Standard

Amendment or alteration of a judgment is appropriate under Rule 59(e) of the Federal Rules of Civil Procedure "if (1) the district court is presented with newly discovered evidence, (2) the district court committed clear error or made an initial decision that was manifestly unjust, or (3) there is an intervening change in controlling law." *Zimmerman v. City of Oakland*, 255 F.3d 734, 740 (9th Cir. 2001). A district court may, in its discretion, disregard legal arguments that are made for the first time on a Rule 59(e) motion to amend. *Id.* Furthermore, a party may not introduce facts in a motion to amend and claim that they constitute "newly discovered evidence" unless the facts were previously unavailable. *Id.*

## II. African Coelacanth Listing Determination

In their summary judgment briefing, Federal Defendants cited the African coelacanth listing determination as an example purportedly proving that proper application of the Final SPR Policy could result in a determination that listing a species was warranted based on threats in a significant portion of the species' range. (*See* Doc.

---

[1] Although the Final SPR Policy was jointly issued by the United States Fish and Wildlife Service and the NMFS, Plaintiffs did not include the NMFS as a defendant in this action, and the NMFS did not seek to intervene.

1  57 at 13-14.)² The Court found that the language contained in the final listing
2  determination for the African coelacanth did not support Federal Defendants' position.
3  (*See* Doc. 72 at 13-14.) Federal Defendants now argue that, by relying upon language
4  contained in the *final* listing determination for the African coelacanth instead of language
5  contained in the *proposed* listing determination, the Court erroneously characterized the
6  listing determination. To support their argument, they attach a declaration from Angela
7  Somma, Chief of the Endangered Species Conservation Division within the NMFS Office
8  of Protected Resources. (Doc. 76-1.) The Somma declaration indicates that the
9  reasoning set forth in the final listing determination for the African coelacanth was an
10 incomplete summary of the agency's actual reasoning, and it urges the Court to look to
11 the proposed listing determination for clarification.

12 The Somma declaration is not part of the administrative record, and it does not
13 constitute newly discovered evidence that was previously unavailable. Furthermore, the
14 propriety of the African coelacanth listing determination is not at issue before this Court.
15 The Court addressed the listing determination in its prior Order only because Federal
16 Defendants relied on it in support of their argument that the Final SPR Policy gives
17 independent meaning to the statutory phrase "significant portion of its range." Federal
18 Defendants' new arguments concerning the African coelacanth listing determination
19 could have been raised earlier, and they do not alter the Court's conclusion that the Final
20 SPR Policy renders the SPR language of the ESA superfluous.

21 As explained in the Somma declaration, the proposed African coelacanth listing
22 determination contains language—not contained in the final listing determination—which
23 tracks the Final SPR Policy's definition of significance. *See Proposed Rule to List the*
24 *Tanzanian DPS of African Coelacanth as Threatened Under the Endangered Species Act*,
25 80 Fed. Reg. 11,363, 11,374 (Mar. 3, 2015). However, both the proposed and final
26 listing determinations contain other language which appears to apply a different, more

27
28  ² Record citations refer to the page numbers electronically generated by the Court's electronic filing system.

- 3 -

lenient definition of significance. *See id.*; *Final Rule to List the Tanzanian DPS of African Coelacanth (Latimeria chalumnae) as Threatened Under the Endangered Species Act*, 81 Fed. Reg. 17,398, 17,401 (Mar. 29, 2016). Due to this imprecision in language, it remains unclear whether the Final SPR Policy was accurately applied to the African coelacanth. Furthermore, it is unclear why NMFS did not find the African coelacanth threatened overall based on the concentrated threats in the Tanzanian portion of its range. If "the effect of extinction throughout" the Tanzanian portion of the African coelacanth's range "is the threat of extinction everywhere," as NMFS found, "then the threat of extinction throughout" the Tanzanian portion of the African coelacanth's range "is equivalent to the threat of extinction throughout *all* its range." *Defenders of Wildlife v. Norton*, 258 F.3d 1136, 1141 (9th Cir. 2001) (emphasis in original).

Regardless of whether the Final SPR Policy's definition of significance was properly applied to the African coelacanth, the fact remains that Defendants have not identified any instance in which application of the Final SPR Policy resulted in a species being listed as endangered or threatened due to its status in a significant portion of that species' range. The African coelacanth was, ultimately, not listed based on its status in a significant portion of its range; it was listed based on threats to a distinct population segment ("DPS"). *See* 81 Fed. Reg. at 17,401. Rather than proving that the Final SPR Policy gives independent meaning to the SPR language of the ESA, the African coelacanth listing determination actually raises additional concerns regarding the Final SPR Policy. Specifically, the listing determination illustrates how the interaction between the Final SPR Policy and the agency's policy interpreting the DPS language of the ESA serves to narrow even further the potential circumstances in which the SPR language of the ESA could have any practical effect. *See Policy Regarding the Recognition of Distinct Vertebrate Population Segments Under the Endangered Species Act* ("Final DPS Policy"), 61 Fed. Reg. 4,722 (Feb. 7, 1996). Both the Final DPS Policy and the Final SPR Policy require significance findings, and although the definitions of significance differ in the two policies, *see* 79 Fed. Reg. at 37,585, there is overlap.

*Compare id.* at 37,581, *with* 61 Fed. Reg. at 4,725. Under the Final SPR Policy, if a "species is not endangered or threatened throughout all of its range, but it is endangered or threatened within a significant portion of its range, and the population in that significant portion is a valid DPS," the agency "will list the DPS rather than the entire taxonomic species or subspecies." 79 Fed. Reg. at 37,579. This provision—by further limiting the already exceedingly rare if not entirely illusory potential circumstances in which application of the Final SPR Policy could result in the listing of a species based on the species' status in a significant portion of its range—supports the Court's conclusion that the Final SPR Policy interprets the statutory phrase "significant portion of its range" so narrowly as to render the phrase "entirely superfluous in all but the most unusual circumstances." *TRW Inc. v. Andrews*, 534 U.S. 19, 29 (2001).

"It is a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." *Id.* at 31 (internal quotation marks omitted). The addition of the "significant portion of its range" language to the ESA "represented a significant shift in the definition in existing law which consider[ed] a species to be endangered only when it is threatened with worldwide extinction." *Defenders of Wildlife*, 258 F.3d at 1144 (internal quotation marks omitted). By interpreting the SPR language so narrowly that "it would in practical effect render" the language "entirely superfluous in all but the most unusual circumstances," the Final SPR Policy not only violates a cardinal principle of statutory construction, *TRW Inc.*, 534 U.S. at 29, but also contravenes congressional intent that the addition of the SPR language represented "a significant change" to the ESA, *Defenders of Wildlife*, 258 F.3d at 1144.

Federal Defendants have not shown that this Court clearly erred in determining that the Final SPR Policy impermissibly renders key statutory language superfluous.

**III.    Vacatur of the Final SPR Policy**

In its summary judgment order, the Court rejected numerous challenges made by Plaintiffs with respect to the Final SPR Policy but agreed with Plaintiffs that the policy

failed to give independent meaning to the statutory phrase "significant portion of its range." The Court clarifies that its vacatur of the Final SPR Policy was intended to be limited to the one aspect of the policy found unlawful by the Court, i.e., the manner in which the policy defines the statutory phrase "significant portion of its range."

In addition to asking the Court to clarify that its vacatur of the Final SPR Policy is limited to the one aspect of the policy found unlawful by the Court, Federal Defendants also ask the Court to limit the vacatur to the District of Arizona or, alternatively, to remand without vacatur. Federal Defendants could and should have raised these arguments during summary judgment briefing. Plaintiffs requested vacatur of the Final SPR Policy in their Motion for Summary Judgment (Doc. 52 at 45), as well as in their proposed order (Doc. 52-5). Federal Defendants were on notice that Plaintiffs were requesting vacatur of the policy, and they had ample opportunity to respond to that request. Federal Defendants complain that they had to address numerous arguments "within fairly tight page limits," and that they could not adequately address remedy issues without knowing the Court's decision on the merits of Plaintiffs' challenges. (Doc. 79 at 5; *see also* Doc. 76 at 4 n.3.) However, the page limitations applicable to Federal Defendants' summary judgment briefs were jointly proposed by the parties themselves. (*See* Doc. 13 at 7; Doc. 14 at 2.) Federal Defendants never moved for leave to exceed the summary judgment page limitations, and they never requested an opportunity to submit supplemental briefing on remedy issues.

Although Federal Defendants' arguments could and should have been raised earlier, the Court will consider the arguments because they implicate Plaintiffs' Article III standing. Federal Defendants failed to contest Plaintiffs' standing prior to entry of judgment. However, Article III standing limits are jurisdictional and cannot be waived. *City of Los Angeles v. City of Kern*, 581 F.3d 841, 845 (9th Cir. 2009). To establish Article III standing, Plaintiffs must satisfy three elements. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). First, they must show that they have suffered an "injury in fact," which is "concrete and particularized" and "actual or imminent." *Id.*

1  (internal quotation marks and citations omitted). Second, they must show that the injury
2  is "fairly traceable to the challenged action of the defendant." *Id.* (internal quotation
3  marks and alteration omitted). Third, they must show that the injury will likely "be
4  redressed by a favorable decision." *Id.* (internal quotation marks omitted). An
5  organization whose members have suffered an injury in fact "may represent those
6  members in a proceeding for judicial review." *Sierra Club v. Morton*, 405 U.S. 727, 739
7  (1972). However, the Administrative Procedure Act ("APA") does not "authorize
8  judicial review at the behest of organizations or individuals who seek to do no more than
9  vindicate their own value preferences through the judicial process." *Id.* at 740. An
10 organizational interest in the problem of environmental protection, "no matter how
11 longstanding the interest and no matter how qualified the organization is in evaluating the
12 problem, is not sufficient by itself to render the organization adversely affected or
13 aggrieved within the meaning of the APA." *Id.* at 739 (internal quotation marks omitted).

14 During summary judgment briefing, Plaintiffs submitted affidavits to establish
15 their Article III standing. (*See* Doc. 52-1, 52-2, 52-3, 52-4.) The affidavits are sufficient
16 to establish standing with respect to the Final Pygmy Owl Finding and the Final SPR
17 Policy as applied in the District of Arizona. However, the Court agrees with Federal
18 Defendants that the affidavits are insufficient to establish Article III standing to challenge
19 the Final SPR Policy nationwide. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 891
20 (1990) ("a regulation is not ordinarily considered the type of agency action 'ripe' for
21 judicial review under the APA until the scope of the controversy has been reduced to
22 more manageable proportions, and its factual components fleshed out, by some concrete
23 action applying the regulation to claimant's situation in a fashion that harms or threatens
24 to harm him"). To address concerns regarding Article III standing and the propriety of
25 nationwide vacatur, the Court will grant Federal Defendants' request to amend the
26 Court's prior judgment to limit vacatur of the Final SPR Policy to the District of Arizona.
27 . . . .
28 . . . .

**IT IS ORDERED** that Federal Defendants' Motion to Amend (Doc. 76) is **granted in part and denied in part**. The Court hereby amends its March 29, 2017 Order and Judgment (Docs. 72, 73) to limit vacatur of the Final SPR Policy to the District of Arizona and to clarify that the only portion of the Final SPR Policy being vacated and remanded for further consideration is the portion found unlawful in the Court's March 29, 2017 Order (Doc. 72). Federal Defendants' Motion to Amend is denied in all other respects.

Dated this 25th day of October, 2017.

_____
Honorable Rosemary Márquez
United States District Judge