## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

|  |  |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY *et al.*,<br><br>      Plaintiffs,<br>    v.<br><br>AURELIA SKIPWITH *et al.*,<br><br>      Federal Defendants,<br><br>AMERICAN FOREST & PAPER ASSOCIATION *et al.*,<br><br>      Defendant-Intervenors. | No. 1:15-cv-00477-EGS |
| DEFENDERS OF WILDLIFE,<br><br>      Plaintiffs,<br>    v.<br><br>AURELIA SKIPWITH *et al.*,<br><br>      Federal Defendants,<br><br>AMERICAN FOREST & PAPER ASSOCIATION *et al.*,<br><br>      Defendant-Intervenors. | No. 1:16-cv-00910-EGS<br>(Consolidated Case) |

## PLAINTIFFS' MOTION FOR ORDER ON REMEDY

## AND MEMORANDUM IN SUPPORT

Pursuant to this Court's Minute Order of September 15, 2020, Plaintiffs in No. 1:15-cv-00477-EGS, the Center for Biological Diversity, Sierra Club, Coal River Mountain Watch, and Ohio Valley Environmental Coalition, and Plaintiff in No. 1:16-cv-00910-EGS Defenders of Wildlife (collectively, "Plaintiffs"), hereby file their Motion for Order on Remedy.

For the reasons set forth in the following memorandum of points and authorities and accompanying declaration in support, Plaintiffs respectfully request that this Court enter an order requiring the U.S. Fish and Wildlife Service to issue a new proposed rule and final listing determination under the Endangered Species Act for the northern long-eared bat, consistent with this Court's Order and Memorandum Opinion of January 28, 2020, ECF Nos. 80, 81, within eighteen (18) months of the entry of the order.

A proposed order accompanies this Motion.

Date: October 2, 2020

Respectfully submitted,

*/s/ Ryan Adair Shannon*
Ryan Adair Shannon (D.C. Bar No. OR 0007)
CENTER FOR BIOLOGICAL DIVERSITY
P.O. Box 11374
Portland, OR 97211
(971) 717-6407
rshannon@biologicaldiversity.org

Counsel for Plaintiffs Center for
Biological Diversity, Sierra Club,
Coal River Mountain Watch, and
Ohio Valley Environmental Coalition

*/s/ Jane P. Davenport*
Jane P. Davenport (D.C. Bar. No. 474585)
DEFENDERS OF WILDLIFE
1130 17th St NW
Washington, DC 20036
(202) 772-3274
jdavenport@defenders.org

Counsel for Plaintiff Defenders of Wildlife

## TABLE OF CONTENTS

BACKGROUND ...................................................................................................................1

    Update on the Northern Long-eared Bat.................................................................................1

    The Long Road to an Endangered Species Act Listing ..........................................................3

PROCEDURAL HISTORY......................................................................................................3

    Complaints and Partial Summary Judgment Motions .............................................................3

    Memorandum Opinion............................................................................................................4

        Listing Determination Violations ......................................................................................5

        Procedural Violations.......................................................................................................6

        Final Significant Portion of Range Policy Violations.........................................................6

    Order ....................................................................................................................................7

    Appeals .................................................................................................................................8

STATUTORY FRAMEWORK.................................................................................................8

ARGUMENT ........................................................................................................................12

I.      The Court Has Ample Equitable Discretion to Order the Service to Issue
       New Proposed and Final Decisions Within Eighteen Months
       of the Date of the Order ..................................................................................................13

II.     The Equities Support Granting Plaintiffs' Requested Order to Ensure the Service
       Acts Promptly to Protect the Bat in Line with the ESA's Conservation Purposes............16

CONCLUSION.....................................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allied-Signal, Inc. v. Nuclear Regulatory Comm'n*,
    988 F.2d 146 (D.C. Cir. 1993) ............................................................................................13

*Am. Wildlands v. Norton*,
    193 F. Supp. 2d 244 (D.D.C. Mar. 31, 2002) .......................................................................14

*Bennett v. Spear*,
    520 U.S. 154 (1997) ..............................................................................................................11

*Biodiversity Legal Found. v. Badgley*,
    309 F.3d 1166 (9th Cir. 2002) ..............................................................................................11

*Carlton v. Babbitt*,
    900 F. Supp. 526 (D.D.C. 1995) ...........................................................................................15

*Carpenters Indus. Council v. Salazar*,
    734 F. Supp. 2d 126 (D.D.C. 2010) ......................................................................................14

*Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*,
    467 U.S. 837 (1984) ................................................................................................................6

*Colo. River Cutthroat Trout v. Kempthorne*,
    448 F. Supp. 2d 170 (D.D.C. 2006) ......................................................................................15

*Ctr. for Biol. Diversity v. Everson*,
    435 F. Supp. 3d 69 (D.D.C. 2020) ..........................................................................................4

*Defenders of Wildlife v. Norton*,
    239 F. Supp. 2d 9 (D.D.C. 2002) ..........................................................................................14

*EME Homer City Generation, L.P. v. Envtl. Prot. Agency*,
    795 F.3d 118 (D.C. Cir. 2015) ..............................................................................................18

*In re Endangered Species Act Section 4 Deadline Litig.*,
    No. 1:10-mc-00377-EGS, MDL No. 2165 (D.D.C.) ........................................................3, 11

*In re Endangered Species Act Section 4 Deadline Litig.-MDL No. 2165*,
    704 F.3d 972 (D.C. Cir. 2013) ................................................................................................9

*Endangered Species Comm. of Bldg. Indus. Ass'n of S. Cal. v. Babbitt*,
    852 F. Supp. 32 (D.D.C. 1994) .......................................................................................13, 15

*Ford Motor Co. v. Nat'l Labor Relations Bd.*,
   305 U.S. 364 (1939) .................................................................................14

*Forest Guardians v. Babbitt*,
   174 F.3d 1178 (10th Cir. 1999) .........................................................11, 18

*Friends of the Wild Swan v. U.S. Fish & Wildlife Serv.*,
   945 F. Supp. 1388 (D. Or. 1996) ..............................................................15

*Idaho Farm Bureau Fed'n v. Babbitt*,
   58 F.3d 1392 (9th Cir. 1995) ....................................................................13

*Intertribal Sinkyone Wilderness Council v. Nat'l Marine Fisheries Serv.*,
   No. 1:12-cv-00420 NJV, 2013 WL 8374150 (N.D. Cal. Nov. 26, 2013).................13

*N. Spotted Owl v. Hodel*,
   716 F. Supp. 479 (W.D. Wash. 1988)........................................................16

*Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*,
   524 F.3d 917 (9th Cir. 2008) ....................................................................13

*Nat. Res. Def. Council v. U.S. Dept. of Interior*,
   275 F. Supp. 2d 1136 (C.D. Cal. 2002) ....................................................15

*Nat. Res. Def. Council v. U.S. Envtl. Prot. Agency*,
   489 F.3d 1250 (D.C. Cir. 2007) (Randolph, J., concurring)......................18

*Or. Nat. Res. Council v. Daley*,
   16 F. Supp. 2d 1256 (D. Or. 1998) ...........................................................15

*Pac. Nw. Reg'l Council of Carpenters v. Bernhardt*,
   No. 1:13-cv-00361-RJL, ECF 126 (D.D.C. Apr. 13, 2020) .....................19

*In re Polar Bear Endangered Species Act Listing and 4(d) Rule Litig.*,
   818 F. Supp. 2d 214 (D.D.C. 2011) ..........................................................13

*Save Our Springs v. Babbitt*,
   27 F. Supp. 2d 739 (W.D. Tex. 1997).......................................................15

*Tenn. Valley Auth. v. Hill*,
   437 U.S. 153 (1978)...............................................................................8, 16

*Trout Unlimited v. Lohn*,
   645 F. Supp. 2d 929 (D. Or. 2007) ...........................................................15

*Tucson Herpetological Soc'y v. Salazar*,
   566 F.3d 870 (9th Cir. 2009) ....................................................................15

**Statutes**

5 U.S.C. § 702 ................................................................................................................4

16 U.S.C. § 1531(a)(3) .....................................................................................................8

16 U.S.C. § 1532(20) .......................................................................................................6

16 U.S.C. § 1533(b) ................................................................................................. *passim*

16 U.S.C. § 1533(b)(3)(A) ....................................................................................9, 12, 17

16 U.S.C. § 1533(b)(3)(B) .........................................................................................12, 17

16 U.S.C. § 1533(b)(6)(A) .........................................................................................12, 17

16 U.S.C. § 1533(b)(7) ..............................................................................................11, 16

16 U.S.C. § 1533(f)(1) .....................................................................................................3

16 U.S.C. § 1540(g)(1)(c) .......................................................................................4, 11, 14

16 U.S.C. § 1540(g)(1) ...................................................................................................14

16 U.S.C. § 1540(g)(5) ...................................................................................................14

**Legislative History**

H.R. Conf. Rep. No. 97-835 (1982) ..................................................................................9

**Federal Register Notices**

76 Fed. Reg. 38,095 (June 29, 2011) ...............................................................................3

78 Fed. Reg. 61,046 (Oct. 2, 2013) ..................................................................................3

80 Fed. Reg. 17,974 (Apr. 2, 2015) .....................................................................1, 2, 3, 17

81 Fed. Reg. 24,707 (Apr. 27, 2016) ................................................................................3

81 Fed. Reg. 1900 (Jan. 14, 2016) ...................................................................................3

The northern long-eared bat has been in population free fall since 2006. In January, this Court held unlawful and remanded the U.S. Fish and Wildlife Service's April 2015 decision to list the species as threatened rather than endangered under the Endangered Species Act. Plaintiffs now ask the Court to order the agency to issue a new proposed rule and final listing determination within eighteen months of the order's date. While the northern long-eared bat can never recoup the conservation benefits of a timely endangered listing, granting this motion will prevent additional harm from bureaucratic delay and ensure the species finally receives full statutory protections.

## BACKGROUND

### Update on the Northern Long-eared Bat

Once a commonly observed species in its core range, the northern long-eared bat (*Myotis septentrionalis*) (Bat) is one of the North American bat species devastated by white-nose syndrome (WNS), a novel infectious disease caused by a cold-loving fungus known as *Pseudogymnoascus destructans* (Pd). Since 2006, this disease has spread like wildfire from its epicenter in upstate New York, killing bats in untold millions. 80 Fed. Reg. 17,974, 17,994–95 (Apr. 2, 2015). The existential threat WNS poses to the Bat has been compounded by the cumulative impacts of forest management, energy development, contaminants, and climate change. *Id.* at 18,006.

A social and colonial animal, the northern long-eared bat swarms with other bats in the fall, hibernates with other bats in winter hibernacula, and forms roosting colonies with other bats in the summer. *Id.* at 17,984–88. These behaviors, regrettably, facilitate the spread of WNS. *Id.* at 17,995. Pd grows readily in the cold and humid environments of hibernacula, infecting the Bat while it overwinters. *Id.* at 17,995–97. The species' life history characteristics make it even more

1

vulnerable to WNS than other afflicted bat species. *Id.* at 17,988, 18,018. As of 2015, there was no evidence that a single individual Bat had ever survived WNS infection. *Id.* at 18,010.

The species' range extends over all or portions of 37 states, the District of Columbia, and 12 Canadian provinces and territories. 80 Fed. Reg. at 17,975. From its detection in 2006 in update New York to April 2015, when the U.S. Fish and Wildlife Service (Service) listed the Bat as threatened, WNS had spread to 25 of these states and five of these provinces and was reasonably presumed to be present in another state and the District of Columbia. *Id.* at 17,996. Pd, the fungus that causes WNS, had also been confirmed in three more states within the Bat's range. *Id.* In just nine years, the species' population had collapsed throughout the core of its range. *Id.* at 17,993–98.

In justifying its decision to list the Bat as threatened rather than endangered, the Service predicted that Pd/WNS would not likely spread throughout the entire species' range for another 8 to 13 years. *Id.* at 18,021–22. Unfortunately, this prediction turned out to be overly optimistic. Since 2015, WNS has continued its inexorable spread and as of August 30, 2019, had been confirmed in seven more states and two provinces in the Bat's range while Pd had been confirmed in two more states in this range.[1] In the United States, only a single state—Louisiana—remains free of WNS/Pd.[2] Despite scientists' best efforts, there is still no effective way to prevent or cure WNS or rid hibernacula of Pd.

---

[1]     White-Nose Syndrome Response Team. White-nose syndrome occurrence map – by year (2019). Data last updated 8/30/2019. Available at "Where is WNS Now?" https://www.whitenosesyndrome.org/where-is-wns
[2]     Northern Long-Eared Bat Final 4(d) Rule. White-Zones Syndrome Zone Around WNS/Pd Positive Counties/Districts. Map created July 26, 2020. Available at https://www.fws.gov/Midwest/endangered/mammals/nleb/pdf/WNSZone.pdf. *See also* Northern Long-Eared Bat Range Map (created November 26, 2019), available at https://www.fws.gov/midwest/endangered/mammals/nleb/nlebrangemap.html

2

**The Long Road to an Endangered Species Act Listing**

On January 21, 2010, the Center for Biological Diversity ("Center") petitioned the Service to list the Bat as endangered or threatened. Nearly eighteen months later, the Service issued its positive 90-day finding. 76 Fed. Reg. 38,095 (June 29, 2011). Two years later, as per the schedule established by the settlement agreement approved by this Court, *see* Stipulated Settlement Agreement, *In re Endangered Species Act Section 4 Deadline Litig.*, No. 1:10-mc-00377, MDL No. 2165 (D.D.C. July 12, 2011) (Sullivan, J.), ECF 42-1, ¶ 3c, *approved at* ECF 56 (Sept. 9, 2011), the Service issued its positive 12-month finding and proposed rule to list the Bat as endangered. 78 Fed. Reg. 61,046 (Oct. 2, 2013).

In the face of significant industry and political pushback, the Service repeatedly reopened the comment period. Pls.' Partial Mot. for Summ. J. on their Listing Claims ("Pls. Mot."), ECF No. 52 at 15–19 (summarizing process). Eighteen months after the proposed endangered rule, the agency published its final rule listing the Bat as threatened instead and an interim 4(d) rule eliminating many of the statutory protections that the species would otherwise have received under the Service's then-extant blanket 4(d) rule for threatened species. 80 Fed. Reg. 17,974 (Apr. 2, 2015). The Service issued a final 4(d) rule nine months later, nearly six years to the day after receiving the original listing petition. 81 Fed. Reg. 1900 (Jan. 14, 2016). The Service has neither designated critical habitat for the Bat, *see* 81 Fed. Reg. 24,707 (Apr. 27, 2016), nor issued the required recovery plan. 16 U.S.C. § 1533(f)(1). This litigation followed.

## PROCEDURAL HISTORY

**Complaints and Partial Summary Judgment Motions**

The Center et al. Plaintiffs filed their original complaint in April 2015, ECF No. 1, followed by their First Amended Complaint filed in May 2016. ECF No. 27 (Center Compl.).

Independently, Defenders of Wildlife (Defenders) also filed its complaint in May 2016, Case 1:16-cv-910-EGS, ECF No. 1 (Defenders Compl.). The cases were consolidated by consent motion shortly thereafter. Minute Order of June 2, 2016.

Plaintiffs challenged the final threatened rule for violating the ESA and the Administrative Procedure Act (APA). Center Compl., First, Second, and Third Claims, ¶¶ 119–136; Defenders Compl., First and Second Claims, ¶¶ 154–167. Plaintiffs also challenged the final 4(d) rule and associated environmental documents for violating the ESA, the National Environmental Policy Act (NEPA), and the APA. Center Compl., Fourth, Fifth, and Sixth Claims, ¶¶ 137–152; Defenders Compl., Fourth and Fifth Claims, ¶¶ 175–186.

Plaintiffs invoked this Court's jurisdiction and sought relief under several statutory authorities, including the ESA citizen-suit provision, 16 U.S.C. § 1540(g)(1)(c), and the APA, 5 U.S.C. § 702. Center Compl. ¶¶ 8–11; Defenders Compl. ¶¶ 7–13. Plaintiffs' prayers for relief included requesting the Court to remand the threatened listing rule without vacatur and order the agency to complete a new final listing determination within six months. Center Compl., Prayer for Relief ¶¶ 9–10; Defenders Compl., Prayer for Relief ¶¶ 1–2.

Following bifurcation of briefing, Minute Order of January 13, 2017, the parties completed briefing on cross-motions for partial summary judgment on Plaintiffs' listing claims in late September 2017, ECF No. 65, and filed e-briefs and other relevant materials by late October 2017. ECF No. 71.

**Memorandum Opinion**

On January 28, 2020, the Court issued an Order granting in part and denying in part the cross-motions for summary judgment, ECF No. 80, and an accompanying Memorandum

Opinion, ECF No. 81 ("Mem. Op.").[3] The Court held that the Service acted arbitrarily and unlawfully in rendering its final threatened determination for the Bat and violated APA notice and comment requirements in doing so. Separately, the Court held that the relevant portion of the Final Significant Portion of Range (SPR) Policy the Service relied on in reaching its threatened determination is invalid both facially and as applied to the Bat. The Court's specific holdings fall into three general categories: listing determination violations, procedural violations, and Final SPR Policy violations.

<u>Listing Determination Violations</u>

First, with respect to the four rationales that, in the aggregate, the Service claimed justified only a threatened listing, *id.* at 12–13, the Court held that the agency had arbitrarily failed to provide a reasoned explanation grounded in the best available scientific data for its conclusion that "in the area not yet affected by WNS (about 40% of the species' total geographic range), the species has not yet suffered declines and appears stable." Mem. Op., ECF No. 81 at 17–18, 21–22 (citing 80 Fed. Reg. at 18,021).

Second, the Court held that the Service violated the ESA's requirement to consider each of the five statutory listing factors individually and in combination by ignoring the cumulative effects of threats other than WNS in explaining the basis for its threatened determination. *Id.* at 22–26.

Third, although holding as a general matter that the Service's interpretation of the phrase "in danger of extinction" in the statutory definition of "endangered" to mean "on the brink of extinction in the wild" is congruent with congressional intent and persuasive under the applicable

---

[3]      This opinion has been published as *Ctr. for Biol. Diversity v. Everson*, 435 F. Supp. 3d 69 (D.D.C. 2020).

standard of deferential review, *id.* at 31–32 (citing *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)), the Court held that the Service failed to provide public notice and an opportunity to comment on its application of this interpretation to the Bat. *Id.* at 33.

Fourth, the Court held that the Service failed to set forth a reasoned explanation of the foreseeability not only of threats to the Bat but also of the impact of those threats on the species in determining that the Bat met the statutory definition of a threatened species. *Id.* at 33–34; *see also* 16 U.S.C. § 1532(20) ("The term 'threatened species' means any species which is likely to become an endangered species within the foreseeable future throughout all or a significant portion of its range.").

<u>Procedural Violations</u>

The Court held that the agency violated the procedural requirements of the ESA and the APA by failing to provide a meaningful opportunity for comments, Mem. Op., ECF No. 81, at 36–37, by violating the requirement that the final rule be a logical outgrowth of the proposed rule, *id.* at 39–40, and by relying on a key change to the Final SPR Policy that itself was not a logical outgrowth of the Draft SPR Policy released for comment. *Id.* at 41, 62–64.

<u>Final Significant Portion of Range Policy Violations</u>

The Court invalidated facially the aspect of the Final SPR Policy the Service relied on in its final threatened determination: "that the Services will not analyze whether a species is endangered in a significant portion of its range if the Services have determined that the species is threatened throughout all of its range." *Id.* at 43. Determining that the two-step framework set forth in *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–44 (1984) supplies the appropriate standard of review, Mem. Op., ECF No. 81 at 43–46, the Court

held that the challenged aspect of the Final SPR Policy failed at *Chevron* step one as inconsistent with the plain language and the statutory design of the ESA. *Id.* at 51–52.

In the alternative, the Court held that the challenged aspect of the Final SPR Policy failed at *Chevron* step two as an unreasonable interpretation of the statute for three reasons: (1) in rendering one basis for listing superfluous, it is inconsistent with the ESA's intent in creating two levels of listing classification, *id.* at 55–56; (2) it is inconsistent with the ESA's principles that allow a species to meet the definitions of "threatened species" and "endangered species" simultaneously, *id.* at 58–59; and (3) it subverts the ESA's conservation goals by allowing the Service to limit the applicability of the "significant portion of range" statutory language based on "practical" concerns of budget limitations and potential public confusion rather than following the statute's directive to render listing decisions solely on the basis of the best available scientific data; *id.* at 60–61.

The Court further held that the challenged aspect of the Final SPR Policy itself also violated the APA's logical growth requirement because the agency failed to provide notice and comment on its decision to change course between the Draft and Final SPR Policies. *Id.* at 62–64.

Finally, the Court held that the Service's application of the Final SPR Policy to support its threatened determination for the Bat was unlawful because the challenged aspect of the Final SPR Policy itself was unlawful. *Id.* at 64–65.

**Order**

As Plaintiffs had requested, Pls. Mot., ECF No. 52 at 70–71, the Court remanded but did not vacate the threatened listing determination for the Bat for the Service to make a new listing decision consistent with its Opinion. Order, ECF No. 80 at 2. In doing so, the Court did not

specifically order the Service to make a new listing decision by a date certain. *Id.* The Court

vacated "the provision of the Significant Portion of Range Policy which provides that if FWS

and the National Marine Fisheries Service ("Services") determine that a species is threatened

throughout all of its range, the Services will not analyze whether the species is endangered in a

significant portion of its range." *Id.*

**Appeals**

Federal Defendants and Defendant-Intervenors appealed this Court's Order to the U.S.

Court of Appeals for the District of Columbia on March 30 and April 3, 2020, respectively. ECF

Nos. 82, 84. Subsequently, both Federal Defendants and Defendant-Intervenors voluntarily

dismissed their appeals. *See Ctr. for Biological Diversity v. Skipwith*, 20-5075, Doc. 1841267

(D.C. Cir. May 4, 2020) (Defendant-Intervenors); *id.* Doc. 1850480 (D.C. Cir. July 7, 2020)

(Federal Defendants). The D.C. Circuit issued mandates restoring this Court's jurisdiction over

this matter on May 13, 2020, ECF No. 86, and July 15, 2020, ECF No. 87.

## STATUTORY FRAMEWORK

The Court is familiar with the language, purpose, legislative history, and implementation

of the ESA's statutory and regulatory framework for listing species. Plaintiffs provide this brief

summary to emphasize the timeliness with which Congress expected the Service to make listing

decisions under section 4, 16 U.S.C. § 1533.

The ESA is "the most comprehensive legislation for the preservation of endangered

species ever enacted by any nation." *Tenn. Valley Auth. v. Hill*, 437 U.S. 153, 180 (1978).

Declaring that endangered and threatened species are of "esthetic, ecological, educational,

historical, recreational, and scientific value to the Nation and its people," 16 U.S.C. § 1531(a)(3),

Congress intended the statute to "provide a means whereby the ecosystems upon which

endangered species and threatened species depend may be conserved, [and] to provide a program for the conservation of such endangered species and threatened species." *Id*. § 1531(b). "'[C]onservation' mean[s] to use and the use of all methods and procedures which are necessary to bring any endangered species or threatened species to the point at which the measures provided pursuant to this Act are no longer necessary." *Id.* § 1532.

Section 4 establishes a detailed process whereby interested persons may petition the Service to list a species as endangered or threatened. Several years after the statute's enactment in 1973, aware that species were frequently awaiting final listing decisions "indefinitely," Congress amended section 4 in 1978 and again in 1982 to establish a timetable for this process. It "replace[d] the Secretary's discretion with mandatory, nondiscretionary duties" to address the "footdragging efforts of a delinquent agency." H.R. Conf. Rep. No. 97-835 at 20–22 (1982). It intended these new deadlines to "expedite the decisionmaking process and . . . ensure prompt action in determining the status of the many species which may require the protections of the Act." *Id.* at 19; *see also In re Endangered Species Act Section 4 Deadline Litigation-MDL No. 2165*, 704 F.3d 972, 978 (D.C. Cir. 2013) (citing legislative history of section 4 amendments).

These amendments imposed mandatory, nondiscretionary deadlines that require the Service to make up to three decisions on listing petitions within prescribed timeframes: the 90-day finding, the 12-month finding, and the final listing determination.

Within 90 days of receipt of a listing petition, the Service must make an initial finding as to whether it "presents substantial scientific or commercial information indicating that the petitioned action may be warranted." 16 U.S.C. § 1533(b)(3)(A). If the Service determines that the petition presents substantial information indicating that listing "may be warranted," the

agency must publish that finding and proceed with a scientific review of the species' status, termed a "status review." *Id.*

After completing the status review, and within one year from the date that it receives the petition, the Service must make a "12-month finding" that renders one of three determinations: (1) listing is "warranted"; (2) listing is "not warranted"; or (3) listing is "warranted but precluded" by other pending proposals for listing species, provided certain circumstances are present. *Id.* § 1533(b)(3)(B).[4] If the Service concludes that listing is warranted, the agency must publish in the Federal Register a notice of a proposed regulation to list the species as endangered or threatened and take public comment on the proposed listing determination. *Id.* § 1533(b)(3)(B)(ii).

To conclude its decisionmaking process, within one year of publication of the proposed listing rule, the Service must publish in the Federal Register the "final listing determination." *Id.* § 1533(b)(6)(A). Thus, the ESA requires the Service in the ordinary course of business to take final action on a listing petition within two years.[5]

---

[4]     If the Service concludes in the 12-month finding that listing is not warranted, the petition process concludes. *Id.* § 1533(b)(3)(B)(i). Alternatively, if the Service determines in the 12-month finding that a petition to list a species is "warranted but precluded," the petition must "be treated as a petition that is resubmitted to the [Service] . . . on the date of such finding." *Id.* § 1533(b)(3)(C)(i). Thereafter, the ESA requires the Service to make a new determination within one year as to whether the species should be listed or instead may again be denied statutory protections on the grounds that its listing is "precluded" by other pending listing actions. *Id.* The ESA provides that any warranted but precluded determination must be based on findings that the petitioned action is "precluded" by other pending listing proposals and that "expeditious progress is being made to add species" to the lists of endangered and threatened species." *Id.* Regardless of whether the Service ultimately lists a species, strict timelines govern when the Service must act in response to a petition.

[5]     *But see id.* § 1533(b)(6)(B)(i) (allowing the Service to extend the one-year period for a final listing determination by up to six months to solicit additional data if it finds that there is substantial disagreement regarding the sufficiency or accuracy of the available data).

These strict limits govern how long the agency may take to make its final decision on a listing petition. But they set a ceiling and not a floor: the ESA contemplates the agency issuing a final listing determination as quickly as 90 days following a proposed rule. *Id.* § 1533(b)(5)(A) (requiring the Service to publish a proposed rule not less than 90 days before the effective date of the regulation). It also gives the agency the authority to emergency list a species for 240 days if necessary while the agency adheres to the statutory notice and comment requirements. *Id.* § 1533(b)(7) (temporarily waiving the ESA and the APA's notice and comment requirements with "regard to any emergency posing a significant risk to the well-being of any species of fish or wildlife or plants").

In part to ensure that section 4's strict deadlines are met, Congress included a citizen-suit provision that allows "any person" to bring suit for any "failure of the Secretary to perform any act or duty under section 4 which is not discretionary with the Secretary." *Id.* § 1540(g)(1)(C). The Supreme Court has called this citizen-suit provision "an authorization of remarkable breadth," *Bennett v. Spear*, 520 U.S. 154, 164 (1997), through which Congress sought to "encourage enforcement" of the ESA's provisions "by so-called 'private attorneys general[,]'" *id.* at 165, e.g., parties such as Plaintiffs, whose core missions include ensuring that the ESA's mandate to conserve imperiled species is carried out.

Indeed, the federal judiciary, including this Court, has repeatedly had to enforce section 4's mandatory, nondiscretionary deadlines against the Service. *See, e.g.*, *Biodiversity Legal Found. v. Badgley*, 309 F.3d 1166, 1177–78 (9th Cir. 2002) (holding that in the ESA section 4 listing context, Congress has foreclosed a court's equitable discretion to withhold relief where the Service has violated the statute's mandatory timeframes); *In re Endangered Species Act Section 4 Deadline Litig.*, No. 1:10-mc-00377-EGS, MDL No. 2165 (D.D.C.) (Sullivan, J.). In

doing so, courts have ordered the Service to act by dates certain irrespective of the agency's claimed administrative, bureaucratic, or financial obstacles. *See, e.g.*, *Forest Guardians v. Babbitt*, 174 F.3d 1178, 1184 (10th Cir. 1999) (holding that the "resource limitations can[not] justify the [Service's] failure to comply with mandatory, non-discretionary duties imposed by the ESA.").

## ARGUMENT

Plaintiffs respectfully request that the Court order the Service to publish a new proposed rule and new final listing determination for the Bat within eighteen months of the order's date. This request is well within this Court's broad equitable discretion to grant and would be consistent with past orders of this Court and many others setting deadlines for action on remanded ESA decisions. An order will vindicate the ESA's conservation purpose of ensuring imperiled species receive the protections they need to survive and recover. It will accord with Congress' express intent that the Service make timely and expeditious listing decisions. And it will fulfill the urgent need to provide the ESA's full protections to the critically imperiled Bat without further bureaucratic delay.

Ordinarily, the Court's remand of the final threatened rule would reinstate the October 2013 proposed listing rule and require a new final listing determination on that proposal consistent with the Opinion. Here, because the Service must both provide a new explanation for why its determination is based on the best available scientific data and cure the procedural notice and comment defects the Court identified, Plaintiffs believe the agency must publish a new proposed rule for notice and comment prior to publishing its new final determination.

A date certain of eighteen months for a new final listing determination will give the Service more time from this Court's January 28, 2020 Opinion and Order to complete the listing

process than the ESA would have allowed if Plaintiffs had filed a brand-new listing petition for

the Bat on the same day. *See* 16 U.S.C. § 1533(b)(3)(A)–(B), (b)(6)(A). By the time the agency

issues its final determination, it will have had more than an extra decade to complete a listing

process the ESA required to have been finalized in January 2012.

I.      **The Court Has Ample Equitable Discretion to Order the Service to Issue New
        Proposed and Final Decisions Within Eighteen Months of the Date of the Order**

Issuing an order requiring the Service to issue a new proposed rule and final listing

determination within eighteen months is well within this Court's equitable authority to shape

appropriate remedies for the Service's ESA and APA violations in listing the Bat as threatened.

Under the APA, although vacatur is the presumptive remedy for agency actions held

contrary to law, *In re Polar Bear Endangered Species Act Listing and 4(d) Rule Litig.*, 818 F.

Supp. 2d 214, 238 (D.D.C. 2011), it is established law in this Circuit that courts have the

equitable discretion to shape remedies in view of the particular circumstances. *See Allied-Signal,

Inc. v. Nuclear Regulatory Comm'n*, 988 F.2d 146, 150–51 (D.C. Cir. 1993). As in this case,

courts have remanded without vacatur where the harm that would result from vacating an ESA

listing determination or critical habitat designation weighed in favor of leaving species

protections in place while the agency cured its errors. *See, e.g.*, *Idaho Farm Bureau Fed'n v.

Babbitt*, 58 F.3d 1392, 1406 (9th Cir. 1995); *Endangered Species Comm. of Bldg. Indus. Ass'n of

S. Cal. v. Babbitt*, 852 F. Supp. 32, 41–43 (D.D.C. 1994).

Courts also have ample discretionary authority to order agencies to make new decisions

on remanded actions by dates certain to serve the interests of justice and vindicate statutory

purposes. *See, e.g.*, *Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*, 524 F.3d 917, 937 (9th

Cir. 2008) (finding that "[t]he district court has broad latitude in fashioning equitable relief when

necessary to remedy an established wrong"); *Intertribal Sinkyone Wilderness Council v. Nat'l

13

*Marine Fisheries Serv.*, No. 1:12-cv-00420 NJV, 2013 WL 8374150, at *2 (N.D. Cal. Nov. 26, 2013) ("[T]o the extent that substantial justification is needed for an imposition of a deadline on the remand in the present case, the court finds that such justification exists in the need to ensure the protection of listed species intended by Congress in enacting ESA"); *see generally Ford Motor Co. v. Nat'l Labor Relations Bd.*, 305 U.S. 364, 373 (1939) ("[W]hile the court must act within the bounds of the statute and without intruding on the administrative province, it may adjust its relief to the exigencies of the case in accordance with the equitable principles governing judicial action.").

Notably, the ESA citizen-suit provision expressly recognizes the full range of the Court's equitable authority to shape appropriate relief. *See* 16 U.S.C. § 1540(g)(1), (g)(1)(C) ("the district courts shall have jurisdiction … to order the Secretary to perform such act or duty" where there has been alleged "a failure of the Secretary to perform any act or duty under section 1533 of this title which is not discretionary with the Secretary,"); *id.* § 1540(g)(5) ("the injunctive relief provided by this subsection shall not restrict any right which any person … may have under any statute or common law to seek enforcement of any standard or limitation or to seek any other relief (including relief against the Secretary or a State agency)." As Judge Kessler observed, "not only did Congress not intend to limit the remedies available under the citizen suit provision, but it expressly reserved the courts' traditional equitable authority." *Defenders of Wildlife v. Norton*, 239 F. Supp. 2d 9, 23 (D.D.C. 2002) (citing 16 U.S.C. § 1540(g)(5); *see also id.* at 22 (noting "excessive delay runs completely counter to the mandate of the ESA").

This Court and others in this District have often ordered dates certain for agency action following remands of ESA decisions on the merits. *See, e.g.*, *Am. Wildlands v. Norton*, 193 F. Supp. 2d 244, 258 (D.D.C. Mar. 31, 2002) (Sullivan, J.) (remanding the Service's not warranted

finding for the westslope cutthroat trout for a new 12-month finding within twelve months); *Carpenters Indus. Council v. Salazar*, 734 F. Supp. 2d 126, 137 (D.D.C. 2010) (Sullivan, J.) (remanding the Service's recovery plan for the northern spotted owl for the issuance of a revised plan within nine months); *see also Colo. River Cutthroat Trout v. Kempthorne*, 448 F. Supp. 2d 170, 178 (D.D.C. 2006) (noting the Service's more than four-year delay in issuing its flawed 90-day finding and ordering it to complete a full status review and issue a 12-month finding within nine months); *Carlton v. Babbitt*, 900 F. Supp. 526, 537–38 (D.D.C. 1995) (ordering the Service "to provide a reasoned analysis" for two remanded 12-month findings within ninety days); *Endangered Species Comm. of the Bldg. Indus. Ass'n of S. Cal.*, 852 F. Supp. at 43 (ordering the Service to publish a new final determination on the listing of the coastal California gnatcatcher within one hundred days of publishing a Federal Register notice providing public notice and comment on the underlying data from reports cited to support the listing decision).

Numerous courts outside this District have followed suit. *See, e.g.*, *Tucson Herpetological Soc'y v. Salazar*, 566 F.3d 870, 874 (9th Cir. 2009) (noting district court order requiring the Service to reinstate a proposed listing rule within sixty days and to issue a final decision within twelve months); *Trout Unlimited v. Lohn*, 645 F. Supp. 2d 929, 965 (D. Or. 2007) (remanding decision to withdraw proposed listing rule and ordering agency to issue a new final listing rule within sixty days); *Nat. Res. Def. Council v. U.S. Dept. of Interior*, 275 F. Supp. 2d 1136, 1143 (C.D. Cal. 2002) (ordering Service to review and publish new proposed critical habitat designations for two species within ten months); *Or. Nat. Res. Council v. Daley*, 16 F. Supp. 2d 1256, 1258 (D. Or. 1998) (noting previous order remanding decision to withdraw proposed listing rule to agency to issue a new final rule within one month); *Save Our Springs v. Babbitt*, 27 F. Supp. 2d 739, 749 (W.D. Tex. 1997) (remanding decision to withdraw proposed

listing and ordering Secretary to make a new listing determination within thirty days); *Friends of the Wild Swan v. U.S. Fish & Wildlife Serv.*, 945 F. Supp. 1388, 1402 (D. Or. 1996) (remanding the Service's 12-month warranted but precluded finding for reconsideration within four months); *N. Spotted Owl v. Hodel*, 716 F. Supp. 479, 483 (W.D. Wash. 1988) (remanding the Service's 12-month not warranted finding for a new analysis and explanation within ninety days).

## II.    The Equities Support Granting Plaintiffs' Requested Order to Ensure the Service Acts Promptly to Protect the Bat in Line with the ESA's Conservation Purposes

As the Supreme Court recognized, Congress spoke "in the plainest of words," and made "it abundantly clear" that any balance of the equities "has been struck in favor of affording endangered species the highest of priorities," in line with the ESA's policy of "institutionalized caution." *Tenn. Valley Auth. v. Hill*, 437 U.S. at 194. The equities here favor requiring the Service to take final action on remand within eighteen months of the order so that the critically imperiled Bat—and Plaintiffs' interests in the species' conservation—are not irredeemably harmed by further bureaucratic delay. Granting this order will vindicate the ESA's conservation purpose and Congress' intent that the Service act as expeditiously as possible "to halt and reverse the trend toward species extinction, whatever the cost." *Id.* at 184; *see also* 16 U.S.C. § 1533(b)(7) (temporarily waiving the ESA and the APA's notice and comment requirements with "regard to any emergency posing a significant risk to the well-being of any species of fish or wildlife or plants").

The spread of WNS has devastated the Bat, with populations crashing once WNS takes hold. Pls. Mot., ECF No. 52 at 10–12. As stated above, the disease has spread even faster than the Service predicted in justifying its decision to list the species as threatened rather than endangered, with only a single state now free of WNS/Pd in the species' U.S. range. *See supra* notes 1–2. In the face of such loss, the Bat needs the full protections of the ESA as soon as

possible in order to alleviate "any additional stressors [that] have the potential to reduce viability," 80 Fed. Reg. at 18,017, including those identified by the Service as cumulative stressors on struggling remnant populations, *id.* at 18,006.

The requested order also accords with Congress' imposition of strict deadlines for completing the ESA section 4 listing process to ensure that imperiled species timely receive the life-saving protections they need. Those deadlines require the Service to conclude the listing process within two years when starting with a blank slate. 16 U.S.C. § 1533(b)(3)(A)–(B), (b)(6)(A). Allowing the Service eighteen months from the date of the order for a new final listing determination will give the Service more than two years (from the Court's Order and Opinion of Jan. 28, 2020) and the Service will start from far more than a blank slate.

From a factual perspective, the Service has been studying the Bat for more a decade, beginning with the January 2010 listing petition. In the first half-decade, the Service completed a status review, proposed and final listing determinations, and an interim 4(d) rule. The following year, it completed a final 4(d) rule (together with a programmatic biological opinion and NEPA analysis) as well as a final critical habitat determination. In the half-decade since the threatened listing, the Service has engaged in numerous section 7 consultations with federal agencies, requiring that it iteratively update its analyses of the Bat's status and gather information concerning threats.[6]

---

[6]     *See* Midwest Region Endangered Species, Northern Long-Eared Bat (*Myotis septentrionalis*), Federal Project Reviews Section 7 Consultation, available at https://www.fws.gov/midwest/endangered/mammals/nleb/index.html; *see also* Midwest Region Endangered Species, Section 7 Consultation Midwest Region Biological Opinions, available at https://www.fws.gov/midwest/endangered/section7/r3bo.html for Bat-related opinions from March 19, 2015 to March 1, 2019; U.S. Fish and Wildlife Service, ECOS Environmental Conservation Online System, Northern Long-Eared Bat (*Myotis septentrionalis*) Species Profile, available at https://ecos.fws.gov/ecp0/profile/speciesProfile?spcode=A0JE for biological opinions after March 1, 2019.

From a legal perspective, this Court's detailed Opinion gives the Service a clear roadmap for how to remedy the substantive and procedural errors it committed in listing the Bat as threatened. Allowing the agency more than the two-year listing schedule contemplated by the ESA would contravene the ESA's conservation purpose to ensure that the species timely receives the full suite of statutory protections it requires to survive and recover.

Absent an order directing the Service to publish its new final determination by a date certain, this Court's remand acts "in effect, an indefinite stay of the effectiveness of the court's decision and agencies naturally treat it as such" because the agency has no incentive to act in a reasonable time. *Nat. Res. Def. Council v. Envtl. Prot. Agency*, 489 F.3d 1250, 1264 (D.C. Cir. 2007) (Randolph, J., concurring) (citation omitted); *see also EME Homer City Generation, L.P. v. Envtl. Prot. Agency*, 795 F.3d 118, 132 (D.C. Cir. 2015) ("To be sure, remand without vacatur creates a risk that an agency may drag its feet and keep in place an unlawful agency rule."). Especially given the Service's repeated delays in taking final action on the listing process for the Bat, the requested order is appropriate to prevent further delay.

The Service may argue that it cannot meet this schedule because it is constrained by its limited budget and competing priorities. But courts have ordered the Service to act by dates certain irrespective of alleged administrative, bureaucratic, or financial obstacles when the agency has violated its duties under the ESA. For instance, in *Forest Guardians*, the Tenth Circuit rejected the Service's request to refrain from ordering it to act by a date certain even though the Service faced a backlog of species awaiting critical habitat designations following a multiyear congressional spending moratorium. *Id.* at 1191–93; *see also id.* at 1193 (remanding case to the district court "with instructions to order the Secretary to issue a final critical habitat designation for the silvery minnow as soon as possible, without regard to the Secretary's other

priorities under the ESA.")  Here, while the Service does not currently face a spending moratorium, it admittedly does face a significant backlog of species awaiting the protections of the Act. However, history shows that this is a problem of the agency's own making.[7]

Disappointingly, there is no reason to expect that the Service will act expeditiously here in the absence of an order establishing a date certain for its final determination on the Bat. The agency has a long history of undermining section 4's directive to render timely listing decisions through lengthy bureaucratic delay and political interference. Declaration of Noah Greenwald, ¶¶ 4–9 (Ex. 1). Notwithstanding section 4's prescribed two-year timetable, between 1974 and 2014, it took the Service more than twelve years on average to complete the listing processes for a single species. *Id.* ¶ 5. This delay has had dire costs. At least forty-seven species have gone extinct while awaiting protection. *Id.*

As a result, since the early 1990s, final listing determinations have occurred, if at all, almost solely in response to petitions and missed deadline litigation. *Id.* ¶¶ 4–5, 9. This failure to make the timely decisions section 4 requires is a longstanding problem. A 1990 report from the Department of the Interior's Inspector General concluded that the Service was not making sufficient progress in meeting its statutory duty to reduce a backlog of over 3,000 species then awaiting listing decisions. *Id.* ¶ 4. The backlog and resulting delays have only increased under the Trump administration. Since this administration took office, the Service has listed only

---

[7] The Service has shown that it can act with alacrity when it so chooses. For instance, the Service agreed to revisit its 2012 critical habitat designation for the northern spotted owl to consider whether to exclude any further areas from the designation and whether there is any other basis for revisiting its prior designation. *See* Stipulated Settlement Agreement and [Proposed] Order, *Pac. Nw. Reg'l Council of Carpenters v. Bernhardt*, No. 1:13-cv-00361-RJL, ECF No. 126 (D.D.C. Apr. 13, 2020). The agency agreed to issue a new proposed rule with any proposed exclusions within three months of the settlement agreement and to submit a final revised critical habitat designation to the Federal Register within approximately five months of the proposed rule. *Id.* at ¶¶ 1–2.

twenty-three species to date, far fewer than the previous administration's record at the same point in its tenure. *Id.* ¶ 9.

An order from this Court requiring the Service to issue a new proposed rule and final listing determination within eighteen months is the only way to prevent bureaucratic footdragging from further delaying the full statutory protections to which the Bat is entitled and that it so desperately needs.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request this Court to enter an order on remedy directing the Service to issue a new proposed rule and final listing determination for the northern long-eared bat, consistent with the Court's Order and Memorandum Opinion, ECF Nos. 80, 81, within eighteen months of the order's date.

Date: October 2, 2020

*/s/ Ryan Adair Shannon*
Ryan Adair Shannon (D.C. Bar No. OR 0007)
CENTER FOR BIOLOGICAL DIVERSITY
P.O. Box 11374
Portland, OR 97211
(971) 717-6407
rshannon@biologicaldiversity.org

Counsel for Plaintiffs Center for
Biological Diversity, Sierra Club,
Coal River Mountain Watch, and
Ohio Valley Environmental Coalition

Respectfully submitted,

*/s/ Jane P. Davenport*
Jane P. Davenport (D.C. Bar. No. 474585)
DEFENDERS OF WILDLIFE
1130 17th St NW
Washington, DC 20036
(202) 772-3274
jdavenport@defenders.org

Counsel for Plaintiff Defenders of Wildlife